WILEY WILLIAMS v. THE COUNTY OF SAN SABA.

(Case No. 4784.)

1. ADMINISTRATION.— An agreement made with an administrator, by which land belonging to the estate should not be sold, but conveyed to a county in consideration of a conveyance of land owned by the county to one of the heirs, was void when not authorized by the probate court having jurisdiction of the estate, and in which administration was pending.

2. STATUTE OF FRAUDS — RESULTING TRUST.— When land is purchased on a credit, and a deed made to the purchaser which is intended by the parties to vest both the legal and equitable title in the purchaser, a subsequent payment of the purchase money by a third person does not have the effect of vesting the title in him who pays it, in the absence of some written memoranda in writing, signed by the parties, evidencing such to be their intention. Such a transaction creates no resulting trust, and is within the statute of frauds.

APPEAL from San Saba. Tried below before the Hon. A. O. Cooley.

Suit by appellee, filed the 26th August, 1881, to recover four and three-eighths acres of land in the town of San Saba.

The plaintiff claimed that it was the equitable owner of the land by reason of a parol agreement made about the 9th October, 1856, between its chief justice, J. B. Harrell, on the one part, and D. F. Brown, as administrator of J. Porter Brown's estate, J. W. Fleming and J. H. Brown, on the other, as follows: That it was mutually agreed between them that the county of San Saba should convey her interest in a certain block 11, of the town of San Saba, then owned by said county, to Mrs. Jane Brown, widow of J. Porter Brown; in consideration thereof, D. F. Brown, as administrator, should release to J. W. Fleming and J. H. Brown the amount due from them as purchasers of the four and three-eighths acre tract of land which they on that day purchased at public sale of the estate of J. Porter Brown, and in consideration thereof J. W. Fleming and J. H. Brown should convey to the county the four and three-eighths acre tract. Plaintiff also showed that the county complied with its part of the contract, and did, through its chief justice, J. B. Harrell, make the deed to Mrs. Jane Brown; that D. F. Brown, administrator, complied also with his part of the contract by releasing Brown and Fleming from the payment of the purchase money for the four and three-eighths acres; that Brown and Fleming failed to comply with their part of the contract by not conveying the land to the county; but that subsequently, on the 21st March 1862, Brown and Fleming, with full knowledge on the part of the San Saba Lodge of A. F. & A. Masons, No. 225,

conveyed to the lodge the four and three-eighths acres, to be held by it in trust for educational purposes; that said lodge continued to hold the same in trust for said purposes until the 20th December, 1877, when it conveyed the four and three-eighths acres to one T. N. O'Connell, who bought with full knowledge of plaintiff's equitable right; that, on the 24th February, 1880, O'Connell sold the four and three-eighths acres to Wiley Williams, who bought also with full knowledge of plaintiff's equitable title, and that he was holding the same adversely to plaintiff. Plaintiff prayed for decree to establish its equitable title to the four and three-eighths acres, and that title be decreed out of Wiley Williams and be vested in plaintiff.

Defendant answered by general demurrer; special demurrer; plea of three, five and ten years; plea of stale demand; that both O'Connell and Williams were innocent purchasers, in good faith, for a valuable consideration; statute of frauds; the plaintiff is estopped from setting up claim to property, having induced O'Connell to purchase, etc.

Plaintiff replied by supplemental petition. 1st. Demurrer to so much of defendant's answer as pleads stale demand. 2d. Demurrer to so much of defendant's answer which sets up the plea of estoppel. 3d. Denies generally and specially the allegations of defendant's answer.

*Wm. M. Allison* and *Fisher & Fisher*, for appellant, cited Todd v. Caldwell, 10 Tex., 237; Teal v. Terrell, 48 Tex., 491; Ferguson v. Halsell, 47 Tex., 421.

On the statute of frauds, Glasscock v. Nelson, 26 Tex., 150; McMasters v. Mills, 30 Tex., 595; Tinnen v. Mebane, 10 Tex., 246; De Cordova v. Smith, 9 Tex., 129; Carlisle v. Hart, 27 Tex., 350; Mason v. Hollowell, 56 Tex., 484; McGown v. Schrimpf, 21 Tex., 22; Hind v. Holdship, 2 Watts, 104; Arnold v. Lyman, 17 Mass., 400; Jackson v. Mayo, 11 Mass., 152; Hinkley v. Fowler, 15 Me., 285; Hall v. Marston, 17 Mass., 575; Parsons on Contracts, vol. 1, p. 491, star pp. 467–68.

*Carleton & Morris,* for appellee, cited Bell Co. v. Alexander, 22 Tex., 350; Bispham's Principles of Equity, sec. 95; Miller v. Alexander, 8 Tex., 43; Viser v. Rice, 33 Tex., 139; Walker v. Howard, 34 Tex., 478.

STAYTON, ASSOCIATE JUSTICE.— The only question necessary to be considered in this case is: did the appellee show such title as authorized a recovery?

The property originally belonged to the estate of J. Porter Brown, deceased, under whom, by regular chain of title, the appellant holds. That prior to the time the administrator of the estate of J. Porter Brown, under order of the proper probate court, sold the land in controversy to J. H. Brown and J. W. Fleming, there had been a parol agreement that the administrator would not sell the land in controversy, but would convey it to the county of San Saba in consideration that the county would convey to Mrs. Jane Brown block 11, in the town of San Saba, which the county then owned, could not give to the county any title whatever in the land.

Waiving all question as to the validity of a verbal sale of land, unaccompanied with such facts as would in a court of equity give validity to such a transaction, it is certainly true that the administrator could have made no such contract, without being authorized so to do by the probate court in which the administration was pending; and as it is not contended that any such consent was given, it becomes unnecessary to consider what would have been the effect of such an exchange of lands, had the probate court directed it.

It then only becomes necessary to consider the effect of the subsequent verbal agreement made between the chief justice of the county and Brown and Fleming, after they had purchased the property, and the action of the Masonic lodge after Brown and Fleming had conveyed the property to it.

The record clearly shows that Brown and Fleming did not purchase the property as the agent of, or in trust for, San Saba county. Their agreement, not made in writing, to accept a credit upon the obligation which they had given for the purchase money of the land in controversy, which they subsequently conveyed to the Masonic lodge, could not have the effect of vesting title to the property in the county.

The agreement between them and the administrator was subsequent to their purchase, and if, at the time that agreement was made, instead of conveying to Mrs. Brown block 11, the county had paid in money, upon the obligation of J. H. Brown and J. W. Fleming, to the administrator of the estate, a sum equal to or even greater than the sum which Brown and Fleming had bound themselves to pay for the property in controversy, that could not have passed the title to the property to the county in the absence of some written agreement.

This is not a case in which property has been bought with the money or other means of one person, and the deed taken in the name of another, which would create a resulting trust. But it is a case in which the property was bought upon a credit, and a deed made to

the purchaser, intended by all parties concerned to vest both the legal and equitable title in the person to whom the deed was made.

In such case the payment of the purchase money at some subsequent period cannot have the effect of vesting the title to the property in the person making such payment, unless there be a writing between the parties evidencing such intention; for this would be to give an effect to such payment which the law does not attach to it, and it would contravene the spirit and letter of the statute of frauds.

There is nothing in the record which would place the appellee upon higher ground, in reference to title, than stands a person who has made a verbal contract to purchase land, and has paid all of the purchase money. It does not appear that the appellee took possession and made such improvements as would entitle it to specific performance even of an express verbal contract, nor that it has done any other act which, as between the parties to it, would entitle it to specific performance of a verbal agreement to convey land.

The fact that the Masonic lodge, after the property was conveyed to it by Brown and Fleming, among its own members, may have recognized some equity in the county to have the land, cannot affect the right of persons claiming through a conveyance from the lodge, unless it were shown that the lodge took and held the title in some way in trust for the appellee, and that of such fact the purchasers from it had knowledge.

No facts are contained in the record to show that any trust relation in regard to this property existed between the appellee and the lodge, and there is a strong presumption, arising from the fact that the lodge subsequently sold the land to O'Connell, under whom the appellant claims, that it did not recognize the existence of any trust in favor of the appellee.

The burden of showing such a state of facts as would have entitled the appellee to have had the legal title vested in the lodge, divested and invested in itself, was upon the appellee, and in the absence of such proof, and further proof of knowledge of such facts by a purchaser or purchasers from the lodge, it was not entitled to recover.

More than twenty years have elapsed since Brown and Fleming conveyed the property to the lodge, and time may have obscured the real transaction between the parties; and this case well illustrates the necessity for prompt action by those whose rights are not evidenced in the enduring manner prescribed by law for the transfer of title to real estate.

As the cause was tried by the court without a jury, the judgment will be reversed and such judgment here rendered as the court below ought to have rendered upon the proof; and judgment will be here rendered that the appellee take nothing by this suit, and that the appellant recover the costs of this court and of the court below.

REVERSED AND RENDERED.

[Opinion delivered May 17, 1883.]